UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
UNITED STATES OF AMERICA         :
                                 :
v.                               :            **ORDER**
                                 :
ISAIAH WASHINGTON,               :            14 CR 768-4 (VB)
                    Defendant.   :
--------------------------------------------------------x

Now pending is defendant Isaiah Washington's motion pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) to reduce his term of imprisonment in light of the current COVID-19 pandemic. (Doc. ##512, 521).

For the following reasons, the motion is GRANTED.

The background of this case is as follows.  On March 17, 2016, Washington was sentenced to 30 months' imprisonment, followed by three years' supervised release, on his plea of guilty to one count of bank robbery.[1]  He completed that prison sentence on June 7, 2017, but his adjustment to supervised release was poor.  On October 16, 2019, the Court sentenced Washington to 12 months' imprisonment, followed by 12 months' supervised release, on his first violation of supervised release ("VOSR"), for possession of child pornography.  That violation arose out of Washington's possession of lewd images of a 17-year-old female acquaintance. After completion of that sentence on March 5, 2020, Washington's adjustment to supervision was again poor.  As a result, a second VOSR report was submitted to the Court on August 10, 2020, charging Washington with marijuana use as well as several mostly technical violations, such as misleading his probation officer about his activities and whereabouts, not attending mandated treatment, and associating with a convicted felon.  On September 30, 2020,

---

[1]  Judgment was entered on March 22, 2016.  (Doc. #130).

1

Washington admitted to marijuana use and the Court sentenced him to eight months' imprisonment for using a controlled substance, with no additional term of supervised release to follow.  Washington has been in custody since September 30, 2020, having now served slightly more than three months of his eight-month sentence.[2]

Although the current prison sentence was fair and reasonable at the time it was imposed, under Section 3582(c)(1)(A)(i), the Court is authorized, after considering the factors set forth in 18 U.S.C. § 3553(a), to reduce the sentence if "extraordinary and compelling reasons warrant such a reduction."

Taking into account both Washington's current medical conditions and the risk of serious complications if he were to contract COVID-19 in prison, extraordinary and compelling reasons are present here.  Washington's prison medical records indicate he suffers from chronic asthma, for which he has been prescribed an inhaler, and that he also has a heart murmur, although there is no evidence the heart murmur is abnormal or requires treatment.  The records also reflect he has repeatedly complained of chest pain and shortness of breath, although there is no indication those conditions are related to heart or respiratory problems.  Indeed, Washington is only 24 years old, and his presentence report, prepared in 2016, says he is otherwise in good health.

This is a close call.  Clearly, Washington's asthma might place him at increased risk of severe illness should he contract the virus.  See People With Certain Medical Conditions, CTRS. FOR DISEASE CTRL. & PREVENTION https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited January 4, 2021).  His other

---

[2]     For most of that time, Washington was held at the Orange County Jail.  The government has advised the Court that on December 21, 2020, Washington was transferred out of the local jail and was in the process of being transported to a Bureau of Prisons ("BOP") facility.  Because Washington was in local custody at the time the instant motion was filed, the government waived Section 3582(c)(1)(A)'s exhaustion requirement.   (Doc. #526).

complaints have not been linked to heart or respiratory problems, although they certainly raise some concerns. The Court finds, albeit just barely, that Washington's health conditions constitute extraordinary and compelling reasons warranting a sentence reduction under Section 3582(c)(1)(A)(i).

As required by the statute, the Court has also considered the sentencing factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable. It is relevant that Washington is serving a relatively short sentence for a VOSR, and that the violation arose out of his use of marijuana, rather than out of new serious criminal conduct. He has about five months left to serve out of an eight-month prison sentence. On balance, the Court is satisfied that the sentencing objectives in this case—promoting respect for the law, specific deterrence, and just punishment for Washington's breach of the Court's trust—will be satisfied by a combination of the time Washington has already spent in prison, plus a period of home incarceration in substitution for the remainder of his prison sentence. Home incarceration is certainly a less severe punishment than prison, but it is punishment nonetheless.

As an additional matter, the Court is persuaded that Washington will be entering a stable environment upon his release. As set forth in his submissions, Washington proposes to live with his girlfriend Arvieann Smith and her two children at their home in Yonkers, New York, which has an extra bedroom for Washington's sole use. Washington proposes that Ms. Smith will strictly supervise him in her home, and the Court expects her to do just that. The Court also expects—and expresses its appreciation in advance—that Washington's attorney will assist his client in smoothly transitioning from jail to home incarceration. Accordingly, the Court approves this release plan.

Washington has done little on his own to deserve this rather favorable outcome. However, he does say in a letter to the Court that if his request is granted, "I promise you, you'll never see me step foot in your courtroom ever again." (Doc. #512 at ECF p. 3).  The Court takes Washington at his word.  But he is advised that if he breaches the Court's trust again, the Court will not hesitate to return him to prison.

## CONCLUSION

Defendant Isaiah Washington's motion for compassionate release is GRANTED, and his term of imprisonment is reduced to time served, plus seven days, to be followed by a term of supervised release for the unserved portion of his eight-month term of imprisonment, through and including May 31, 2021, the date his prison sentence would otherwise have ended.  **The Court ORDERS the Bureau of Prisons to release defendant on Monday, January 11, 2021, by no later than 12:00 p.m.**

With respect to the period of supervised release, the Court re-imposes all of the Mandatory, Standard, and Special conditions of supervised release (except for Standard condition number 13) set forth in the Judgment entered on March 22, 2016.  (Doc. #130).  The following additional conditions of supervised release, all of which are rationally related to the instant VOSR, the underlying offense of conviction, and the Section 3553(a) factors, shall also apply:

1. Defendant shall serve the unserved portion of his eight-month term of imprisonment—through May 31, 2021—on home incarceration at the home of Arvieann Smith in Yonkers, New York, to be enforced by GPS monitoring.  Installation of a GPS monitoring device shall occur immediately after the fourteen-day period of self-quarantine (described in item 2 below).  During the period of home incarceration, defendant must remain at home except as

necessary for medical treatment, which will require prior notice to, and approval by, the Probation Department, unless the medical treatment involves a true emergency. If, after sixty days of home incarceration, the Probation Department believes it is appropriate, it may make an application to the Court for defendant to be permitted to leave home for the purpose of employment or other pre-approved activities.

2. In light of the COVID-19 pandemic, defendant shall, upon release from custody, self-quarantine for fourteen days, physically distancing himself from any other occupants of his home.

3. Defendant shall possess or have access to a telephone that will allow for video conferencing with the Probation Department. This requirement shall remain in effect during the entire period of home incarceration, unless waived by the Probation Department or the Court.

4. Immediately upon his release from custody, defendant shall contact Supervisory U.S. Probation Officer Kevin Mulcahy (914-390-4048) to arrange for the installation of a GPS monitoring device.

Dated: January 4, 2021
      White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge